IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00075-KDB-DCK

| | |
|---|---|
| **CADLINK AMERICA, INC.,** | |
| **Plaintiff,** | |
| v. | **ORDER** |
| **UR MENDOZA JADDOU,** | |
| **Defendant.** | |

      **THIS MATTER** presents an appeal under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq.*, from the United States Citizenship and Immigration Services' ("USCIS") denial of Plaintiff CADLink America, Inc.'s Form I-129 petition for nonimmigrant L-1B work status for one of its employees, Daria Sheina. Now before the Court are the parties' cross motions for summary judgment. (Doc. Nos. 19, 21). The Court has carefully considered these motions, the parties' briefs and the certified administrative record ("CAR") on which this appeal must be heard. Because the Court finds that USCIS' decision was not arbitrary, capricious or incorrect as a matter of law, it will **GRANT** Defendant's motion, **DENY** Plaintiff's motion and **AFFIRM** USCIS' decision.

1

## I.    LEGAL STANDARD AND REGULATORY OVERVIEW[1]

### A.    Legal Standards

The Administrative Procedure Act ("APA") provides for judicial review of final agency actions. *See* 5 U.S.C. §§ 702 and 704. Under the APA, a court may hold unlawful and set aside agency action only if it finds the agency's action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The scope of review under the "arbitrary and capricious" standard is a narrow one. *Bowman Transportation, Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). A reviewing court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). Instead, the court must consider whether the agency's action was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416). Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may nevertheless "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc.*, 419 U.S. at 285–86 (internal citation omitted); *Sanitary*

---

[1] The parties generally agree on the standards for the Court's review and the relevant regulatory framework, which are well established. After its independent analysis, the Court finds that the Defendant's memorandum appropriately and comprehensively states the relevant legal and regulatory background so the Court has (in most respects) replicated that portion of the memorandum in this Order.

*Bd. of City of Charleston, W. Virginia v. Wheeler*, 918 F.3d 324, 333 (4th Cir. 2019) (citing *Nat'l*

*Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)).

APA review of agency action "is highly deferential, with a presumption in favor of finding

the agency action valid." *Coleman v. Kendall*, 74 F.4th 610, 618 (4th Cir. 2023) (quoting *Ohio*

*Valley Environmental Coalition*, 556 F.3d at 192).[2] "Agencies have expertise and experience

in administering their statutes that no court can properly ignore." *Judulang v. Holder*, 565 U.S.

42, 53 (2011). Courts will find agency action arbitrary or capricious only when "the agency relied

on factors that Congress has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to difference in view or the

product of agency expertise." *Nat'l Audubon Soc'y v. U. S. Army Corps of Engineers*, 991 F.3d

577, 583 (4th Cir. 2021) (quoting *Hughes River Watershed Conservancy v. Johnson*, 165 F.3d

283, 287–88 (4th Cir. 1999)). "But so long as the agency 'provide[s] an explanation of its

decision that includes a rational connection between the facts found and the chose made,' its

decision should be sustained." *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir.

2014) (quoting *Ohio Valley Environmental Coalition*, 556 F.3d at 192); *Motor Vehicle Mfrs.*

*Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The court is not empowered

---

[2] This deference is different than deference to an agency's interpretation of an ambiguous statute under *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), which is not at issue here. *See Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1130 (D.C. Cir. 2014).

to substitute its judgment for that of the agency." *Ohio Valley Environmental Coalition*, 556 F.3d at 192. Still, despite the narrowness of the scope of review under the APA, "the [C]ourt must nonetheless engage in a 'searching and careful' inquiry of the record." *Aracoma Coal*, 556 F.3d at 192 (citing *Volpe*, 401 U.S. at 416).

Under APA review, the court "does not resolve factual questions, but instead determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *G.D USA, Inc.*, 531 F. Supp. 3d at 980 (citing *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)). "The Court reviews an agency's factual conclusions under the substantial evidence standard which allows the Court to overturn only final agency decisions that are 'unsupported by substantial evidence in a case ... reviewed on the record.'" *G.D USA, Inc.*, 531 F. Supp. 3d at 980 (citing 5 U.S.C. § 706(2)(E)). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion which is something less than the weight of the evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619-20 (1966). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 620. In applying the substantial evidence standard, the task "is not to reweigh the evidence and determine which of the competing views is more compelling." *Gonahasa v. U.S. I.N.S.*, 181 F.3d 538, 542 (4th Cir. 1999). The Court may not "substitute its views for that of the agency." *Perez v. Cissna*, 914 F.3d 846, 856 (4th Cir. 2019), *on reh'g en*

4

*banc sub nom. Perez v. Cuccinelli*, 949 F.3d 865 (4th Cir. 2020). "When an agency offers multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid." *Braintree Elec. Light Dep't v. FERC*, 667 F.3d 1284, 1293 (D.C. Cir. 2012) n. 8 (D.C. Cir. 2012).

When cross motions for summary judgment are filed, the court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

**B.** **Regulatory Overview**

The Immigration and Nationality Act ("INA") provides for the classification of foreign nationals seeking temporary or permanent business and employment opportunities. Generally, foreign nationals seeking to work in the United States are required to have an employment-based preference. Among the prerequisites for an employment-based preference, a foreign national generally must have a specific job offer from a United States employer, and the Department of Labor ("DOL") must have certified that (1) there are insufficient United States workers who are able, willing, and qualified to perform that job, and (2) the employment of such foreign national will not adversely affect the wages and working conditions of United States workers similarly employed. *See* 8 U.S.C. § 1182(a)(5). This process is intended to ensure that United States workers are not displaced, and that their wages and working conditions are not negatively affected as a result of the recruitment of foreign workers. To meet this objective,

5

Congress has placed a numerical cap on the number of visas available for some temporary employment visas. 8 U.S.C. § 1184(g)(1)(A).

In 1970, Congress established the "L" nonimmigrant visa category to meet the needs of multinational corporations seeking to provisionally transfer employees who possessed unique managerial or technical expertise, or specialized knowledge to their U.S.-based facilities. Pub. L. No. 91-225, 84 Stat. 116, April 7, 1970. Workers in this category are referred to as "L-1" or "intracompany transferees." *See* 8 U.S.C. § 1101(a)(15)(L). The L-1 category is coveted for various reasons: (1) it is exempted from the labor-certification requirements; (2) applicants are not required to have a college degree; and (3) the spouse and dependent children of the visa holder are also granted visas, including work authorization. 8 U.S.C. §§ 1184(c)(2)(D)-(E); Pub. L. No. 107- 125, 115 Stat. 2403, January 16, 2002 (enacting legislation to provide work authorization for nonimmigrant spouses of L-1 visa holders).[3]

The L-1 intracompany transferee visa has two subclasses: L-1A for executives and managers and L-1B for those with specialized knowledge. 8 U.S.C. § 1184(c)(2)(D). L-1B visas may be renewed for a period up to five years. *Id*. While Congress initially defined specialized knowledge for L-1B visas as "proprietary knowledge not readily available in the United States labor market," that definition has evolved. Through the Immigration Act of 1990

---

[3] Compare with H-1B specialty occupation nonimmigrant visas that are subject to a numerical cap and generally require a bachelor's degree or higher. *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b); 1184(g); 1184(i).

6

(Pub. L. No. 101- 649), 104 Stat. 4978, November 29, 1990, Congress broadened the definition to "special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company." 8 U.S.C. § 1184(c)(2)(B); 8 C.F.R. § 214.2(l)(1)(ii)(D). This definition has been the subject of debate and controversy over the years, but it remains as the operative definition today. *See 1756, Inc. v. Att'y Gen. of U.S.,* 745 F. Supp. 9 (D.D.C. 1990) (detailing legislative history). More recently, courts have acknowledged that while specialized knowledge "need not be proprietary or unique," it "must still be different or uncommon and not generally found in the particular industry." *Fogo De Chao,* 769 F.3d at 1131; 8 C.F.R. § 214.2(l)(1)(ii)(D).

To obtain an L-1B visa, the INA requires the beneficiary employee to have been "employed by the entity sponsoring his or her petition for a continuous period of at least one year within the three years preceding the petition," in a position that involves specialized knowledge. *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1066 (9th Cir. 2008). In addition, the petitioning employer must demonstrate that the employee "seeks to enter the United States to continue working for that employer (or an affiliate) 'in a capacity that … involves specialized knowledge.'" *Fogo De Chao*, 769 F.3d at 1130 (citing 8 U.S.C. § 1101(a)(15)(L)). The regulations specify that successful proof of "specialized knowledge" requires the petitioner to submit evidence of: (1) one year continuous employment with a qualifying entity during the prior three years, (2) in a position that involves specialized

7

knowledge, and (3) an intent for the beneficiary to render services to the petitioning entity that involve specialized knowledge. 8 C.F.R. § 214.2(l)(3).

Furthermore, the L-1B classification also allows a foreign corporation to send a specialized knowledge intracompany transferee to the United States to help set up an affiliated U.S. office. The regulations provide that "the work in the United States need not be the same work which the alien performed abroad." 8 C.F.R. § 214.2(l)(3)(iv). USCIS has interpreted this provision to require both the U.S. position to involve specialize knowledge and the beneficiary himself "to possess such knowledge." August 2015 USCIS Policy Memo regarding L-1B Adjudications Policy, PM- 602-0111 (August 17, 2015) ("2015 Policy Memo"). Further, USCIS makes a distinction between "special knowledge" and "advanced knowledge," and recognizes that the analysis for both require a comparison of the intended beneficiary's skills with other workers in the industry, field, or place of employment. *Id.* at 7. Special knowledge must be distinct or uncommon in comparison to that generally found in the particular industry while advanced knowledge requires knowledge of or expertise in the petitioning organization's specific processes and procedures that is not commonly found in the industry and is greatly developed or further along in progress, complexity and understanding than that generally found within the employer. *Id.*

The regulations regarding "specialized knowledge" state in relevant part:

Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international

markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

8 C.F.R. § 214.2(l)(1)(ii)(D).

The USCIS Adjudicator's Field Manual ("AFM") instructs adjudicators to apply the common dictionary definitions of "special" and "advanced."[4] AFM § 32.6(e) ("Because the statute and regulations do not define the terms 'special' or 'advanced' we look to their common dictionary definitions, as well as the agency's practice and experience in this context."). The manual applies the ordinary definitions of "special" and "advanced" to L-1B applicants:

> [An employee] seeking L-1B classification should, as a threshold matter, possess: Special knowledge, which is knowledge of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets that is distinct or uncommon in comparison to that generally found in the particular industry; or advanced knowledge, which is knowledge of or expertise in the petitioning organization's specific processes and procedures that is not commonly found in the relevant industry and is greatly developed or further along in progress, complexity and understanding than that generally found within the employer. AFM § 32.6(e).

In analyzing the manual, courts have focused on the "distinct or uncommon in comparison to that generally found in the particular industry," "not commonly found in the relevant industry" and "than that generally found within the employer" language. *3V Sigma USA, Inc.*

---

[4] L-1 classification guidance that was previously contained in the AFM has been consolidated into the USCIS Policy Manual ("Policy Manual"), but the update is not intended to change existing policy or create new policy.

*v. Richardson*, No. 2:20-CV-0807-DCN, 2021 WL 809399, at *4 (D.S.C. Mar. 3, 2021) (emphasizing the language while quoting from the manual). Courts have rejected the argument that "specialized knowledge capacity requires no more than a showing of some specialization." *1756, Inc.*, 745 F. Supp. at 11.

The petitioner bears the burden of proof in establishing all elements of eligibility by a preponderance of the evidence. 8 U.S.C. § 1361; 8 C.F.R. § 214.2(l)(1)(i). If the petition is ultimately denied, the petitioner receives written notice of the reasons for the denial and notice of the right to appeal the decision to the Administrative Appeals Office or to submit a motion to the director to reopen or reconsider. *See* 8 C.F.R. § 214.1(l)(8).

## I. FACTS AND PROCEDURAL HISTORY

In 2019, Daria Sheina graduated with a degree in Mechanical Engineering from Ryerson University. CAR (Doc. No. 9) at 423.[5] In her first job after college, Ms. Sheina was employed as a Project Engineer by QBuild Corporation in Toronto, Canada, beginning in February 2020. CADLink America, Inc. is wholly owned by Craig Girdwood, who in turn wholly owns Software Corporation and QBuild Corporation. CAR at 67. All of these companies (collectively "CADLink") provide individual design services to their clients that integrate CAD (Computer-Aided Design) and ERP (Enterprise Resource Planning) business management software systems. These services necessarily requires knowledge of the clients' CAD and ERP software systems in addition to CADLink's proprietary software. CAR at 71-76, 175-193, 280-315. As a Project

---

[5] All CAR citations are to the record page rather than the docket page.

Engineer for QBuild, Ms. Sheina was responsible for scoping out customer technical requirements, communicating with company software engineers, and managing implementation projects. CAR at 72.

On September 16, 2021, CADLink applied through Form I-129 for L-1B "specialized knowledge" intracompany transferee nonimmigrant status for Ms. Sheina at a U.S. port of entry (Peace Bridge, in Buffalo, New York). CAR at 424-425. In her application, she sought to work with CADLink in the United States in the same position and with the same type of responsibilities that she had at QBuild in Canada. CAR at 72, 76. That same day, Customs and Border Patrol ("CBP") approved the petition for a one-year period. While most L-1 petitions are filed directly with USCIS, Canadians, like Ms. Sheina, may file initial L-1 petitions at a Port-of-Entry. As discussed below, requests for extensions of CBP granted I-129 applications are filed with USCIS. The initial CBP petition is not part of the administrative record.

Almost a year later, on September 1, 2022, CADLink filed an I-129 Petition with USCIS seeking to classify Ms. Sheina as a nonimmigrant intracompany transferee (L-1), with an extension of the L-1 for three years. CAR at 57- 68. USCIS's denial of this petition is the subject of this action. The Petition included, among other items, a company letter by Craig Girdwood; Canadian and US tax filings showing Ms. Sheina's employment; information about CADLink's business and its customers; and Ms. Sheina's diploma, immigration records, and pay statements. CAR 72-76, 89-482.

11

Soon after receiving the application, USCIS issued a Request for Evidence ("RFE") in which USCIS requested that CADLink provide additional evidence about Ms. Sheina's specialized knowledge:

> [P]lease specify what is the specific knowledge that the beneficiary has that is "specialized," and thoroughly explain how it would be difficult to impart the relevant knowledge of your products to another employee within the industry or within your organization without significant economic inconvenience or how this knowledge, as mentioned before, can be acquired through on-the-job training, along with a consistent minimum time to gain this knowledge. It is insufficient to state that it is impossible to gain the beneficiary's knowledge without sufficient detail why.

CAR at 490. Additionally, USCIS asked CADLink to "please provide a thorough explanation to when the beneficiary gained the 'specialized knowledge' and detail the beneficiary's application of the 'specialized knowledge' within the context of your operations." *Id*. USCIS further asked CADLink to "provide a comparison with documentary evidence that shows that within your organization or within the industry the beneficiary has 'specialized knowledge.'" *Id*. USCIS provided a list of suggested evidence that could be submitted by CADLink. *See id*. at 490-493.

USCIS also requested additional information relating to the position that Ms. Sheina held with QBuild. USCIS requested evidence that the position with QBuild required "specialized knowledge." *Id*. at 491-492. Again, USCIS was interested in comparison information: "Moreover, you have not described how the duties are if 'special,' is uncommon, noteworthy, distinguished by some unusual qualifications, and generally known by other professionals in the beneficiary's

12

industry; or if 'advanced' is highly developed or complex, at higher level than others, and greatly developed beyond the initial stage…" *Id*. at 492.

Lastly, USCIS requested evidence to establish that the proposed position in the United States required specialized knowledge:

> Further, you state that the beneficiary has "special knowledge of QBuild's software, as well as its customers' needs and preferences, which cannot be easily imparted to a U.S. worker," however simply noting that the knowledge of the U.S. position cannot be imparted to another worker is insufficient. You have not demonstrated that the knowledge would be difficult to impart to another individual without significant economic cost or inconvenience. Please provide evidence that shows that for an organization of your size and/or industry the beneficiary's duties as a Project Engineer are "special" or "advanced" than other employees who have been similarly employed within your organization and/or industry for a similar amount of time as the beneficiary.
>
> As both "special" and "advanced" are relative terms, determining whether a given beneficiary's knowledge is "special" or "advanced" inherently requires a comparison of the beneficiary's position against that of others in your organization and/or against others holding comparable or similar positions in the industry. Here, however, you did not provide a detailed comparison with documentary evidence that shows that within your organization or within the industry the beneficiary's position as a Project Engineer requires specialized knowledge.

CAR at 494. USCIS again provided a list of evidence that could be submitted. *Id*.

On January 19, 2023, CADLink responded to the RFE. The response included a letter from counsel, CAR at 514-519; an expert opinion letter from Dr. Christopher R. Weinberger, an Associate Professor of Mechanical Engineering at the Walter Scott College of Engineering at the Colorado State University and Dr. Weinberger's resume, CAR at 526-546; organizational charts for CADLink and QBuild, CAR at 548-550; Ms. Sheina's training schedule at QBuild in 2020, CAR at 551-553; training materials and internal documents for trainings that Ms. Sheina attended,

CAR at 555-2429; a list of conferences attended by Ms. Sheina, CAR at 2431; and a copy of a non-disclosure agreement signed by Ms. Sheina, CAR at 2433-2437.

After reviewing the information provided, USCIS denied the petition on February 2, 2023. CAR at 1-16. It acknowledged that the request sought an extension of a prior approval by the CBP; however, USCIS only considered, but did not defer, to the prior decision. *Id*. at 1. In its review on the merits, USCIS first determined that CADLink failed to show that Ms. Sheina was qualified to perform services requiring specialized knowledge. CAR at 2-6. In a finding specifically challenged by CADLink, USCIS gave "less weight" to Professor Weinberger's opinion given what it termed his "limited review," which included "educational documents, education evaluation, training documents/certificates and employment history" provided to him by CADLink as well as interviews with Ms. Sheina and Mr. Girdwood. CAR at 4. USCIS also explained that CADLink did not show how the use of their specific tools and technologies equated to specialized knowledge and found that the training documents that CADLink provided were insufficient to demonstrate that the knowledge gained was special or advanced. *Id*. at 5.

Second, USCIS found that Ms. Sheina was not employed abroad in a position that involved specialized knowledge. *Id*. at 6. USCIS found that Dr. Weinberger's advisory opinion did not explain how the beneficiary's knowledge of "up to" 40 CAD programs and 30 ERP systems used by clients were specialized or "how the beneficiary's knowledge [of] application of these programs and systems in her position abroad was specialized." *Id*. at 10-11. Also, USCIS found unpersuasive his testimony that "most" engineers only have a basic understanding of a few systems, compared

to [Ms. Sheina's] extensive knowledge of all the other systems utilized by [clients]." *Id.* at 11.

("Simply stating the number of programs and systems the beneficiary knows and asserting that

other engineers only have knowledge over a few of the systems was insufficient because it does

not elaborate how the beneficiary's knowledge application of these programs and systems in her

position abroad was specialized."). Further, USCIS found that CADLink's submission of the

training documents did "not establish how the beneficiary used the [training] knowledge in the

foreign position" or how the trainings she attended demonstrated why the beneficiary's knowledge

is special or advanced. *Id.* at 11. USCIS noted that CADLink did not sufficiently explain or provide

corroborating evidence to establish that the knowledge required to perform Ms. Sheina's duties

abroad was "notably different th[a]n the knowledge used by other similarly employed workers."

*Id.* at 11.

Third, USCIS determined that the proposed position in the United States did not require

specialized knowledge. *Id.* at 11. USCIS found that the evidence did not demonstrate that the duties

were "special" or "advanced" compared to the knowledge required to perform other similar

positions within the field. *Id.* at 15. In denying the petition, USCIS found that each of the three

reasons was "an independent and alternative basis for denial." *Id.* at 15.

CADLink timely filed its Complaint seeking judicial review of the USCIS decision. The

parties filed the CAR and then filed cross motions for summary judgments. Doc. Nos. 1, 9, 19, 21.

The motions have been fully briefed and are ripe for the Court's ruling.

## II. DISCUSSION

First and foremost in the Court's consideration of the cross-motions for summary judgment is that, as described above, the scope of the Court's review of USCIS' denial of CADLink's application to extend Ms. Sheina's nonimmigrant work visa is a narrow one. The Court may set aside the agency's ruling only if it finds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Further, at the USCIS, CADLink bore the burden of proof in establishing all elements of Ms. Sheina's eligibility by a preponderance of the evidence. 8 U.S.C. § 1361. While the Court may or may not have reached the same conclusion as the agency had it been tasked with deciding the application in the first instance, Plaintiff falls well short of proving that the USCIS did not base its action on a consideration of the relevant factors and that there has been a clear error of judgment. *Ohio Valley,* 556 F.3d at 192. Therefore, the Court finds that USCIS's ruling was not arbitrary or capricious or otherwise subject to reversal.

First, CADLink argues that USCIS should have deferred to the previous CBP approval under USCIS's rules. Doc. No. 21-1 at 2. CADLink is incorrect. In the decision, USCIS properly followed its policy that "USCIS consider, but does not defer to, previous eligibility determinations on petitions or applications made by other U.S. government agencies." USCIS Policy Alert, Deference to Prior Determinations of Eligibility in Requests for Extensions of Petition Validity, PA-2021-05 (April 27, 2021); *see also* Policy Manual, Vol. 2, Pt. A, Ch. 4. In its decision, USCIS stated that it would "consider, but not defer to, previous eligibility determinations" made by CBP.

16

CAR at 1. Therefore, USCIS committed no error in declining to defer to the prior approval by the CBP. *See Ravi Avi, LLC v. Jaddou*, No. CV 5:21-01930-MGL, 2023 WL 144580, at *3 (D.S.C. Jan. 10, 2023) (upholding USCIS decision not to defer to previous eligibility determinations made by other U.S. government agencies).

Second, CADLink claims that USCIS did not follow its Policy Manual in determining that CADLink had failed to establish that Ms. Sheina's positions in both Canada and the United States involved "specialized knowledge" or "advanced knowledge" and that she possessed such knowledge (all of which it was required to prove). The Court disagrees. Rather, the Court finds that it is more accurate to say that CADLink's real complaint is that USCIS did not accept CADLink's evidence as sufficient to prove "specialized" or "advanced" knowledge under the USCIS guidelines. As described in detail above, USCIS fully considered CADLink's arguments and evidence, but sought more and different information related to "specialized" and "advanced" knowledge (with respect to Ms. Sheina, others at the company and among project engineers generally). *See* CAR at 1-17, 490-493. For example, USCIS recounted in its decision that it told CADLink, "nearly every technology company has developed their own specific tools, and technologies to provide services and products. You have not shown that the use of your specific tools and technologies equates to specialized knowledge or that the knowledge of them could not be easily transferred to another employee within your organization or within the field," CAR at 1,

17

and sought additional information towards that proof.[6] Ultimately, when USCIS did not receive evidence it found sufficient, CADLink's application was denied. In sum, USCIS properly considered relevant information and did not "fail to follow its Policy Manual" simply because it did not reach the result that CADLink believes it should have reached.

More specifically, CADLink challenges USCIS' decision to place limited reliance on the opinion of CADLink's expert Dr. Weinberger. Similar to its broader complaints, CADLink asserts that USCIS "utterly discounted the expert opinion" … "without basis." Doc. No. 21-1 at 14. The Court finds otherwise. USCIS directly addressed Dr. Weinberger's opinions and discussed why it found them lacking. *See* CAR at 4, 10-11, 14-15. Initially, USCIS gave "less weight" to Dr. Weinberger's opinion because of what it found to be his "limited review" of Ms. Sheina's "knowledge, the job descriptions furnished by [CADLink], and other documents."[7] CAR at 4. The Court will not overrule that judgment as arbitrary or capricious. As pointed out by the government, Dr. Weinberger's opinions reflected, for example, inaccurate knowledge of how long Ms. Sheina

---

[6] In other words, USCIS indicated to CADLink that just because a company's work is "technical" does not itself suffice to prove that an employee's knowledge of its technical information is "specialized" or "advanced" in this context. CADLink has not provided any authority that suggests this distinction, which appears to be correct, is in any event outside the bounds of the USCIS' permissible judgment (i.e., is not arbitrary, capricious or legally erroneous).

[7] USCIS noted that the expert arrived at his conclusions "through 'facts and data presented to [him] and that [he] has been made aware of through documents provided' such as 'educational documents, education evaluation, training documents/certificates, and employment history,' and resume." CAR at 4. In addition the expert spoke with Ms. Sheina and CADLink's president, but USCIS concluded that "there is no evidence to the information shared that indicated [Ms. Sheina] has specialized knowledge." *Id*.

Case 5:23-cv-00075-KDB-DCK   Document 27   Filed 12/27/23   Page 18 of 22

was employed at QBuild in Canada (he apparently believed that she had been "working for at least two years at QBuild," which overstated her nineteen month tenure by five months, over a quarter of the time she actually worked there).[8] *See* CAR at 533-534. Whether this error was the result of mere inattention or for some reason related to the documents or interviews, it provides sufficient support (in the context of the Court's narrow standard of review) for USCIS' overall determination that the expert's engaged in a "limited review."

USCIS also did not act arbitrarily or capriciously in finding unpersuasive Dr. Weinberger's opinion with respect to the core issue of comparing Ms. Sheina's knowledge to others at CADLink or within the industry. In his report, Dr. Weinberger stated, "I understood Ms. Sheina has a broad knowledge of the systems used by [CADLink], including up to 40 CAD programs and 30 ERP systems. Many engineers may know a few of these systems, but not all of which the company

---

[8] Of course, the length of time that Ms. Sheina worked at QBuild in Canada is not a tangential question. Indeed, how quickly she developed her alleged "specialized knowledge" is an important component of the issues raised by CADLink's application. As the government points out, CADLink had to establish that Ms. Sheina worked in a position involving "specialized knowledge" with QBuild for at least 12 months in Canada. 8 U.S.C. § 1101(a)(15)(L). There is no claim by CADLink that Ms. Sheina had "specialized knowledge" when she joined the company directly out of college (which would likely in any event significantly undermine its application), so the "Project Manager" position itself presumably only qualified under the statute at some point at least several months into her employment (a timing question put to CADLink which was never answered). So, CADLink's expert's lack of awareness of how long Ms. Sheina was at QBuild is not an insignificant error. Also, the mistake that Ms. Sheina "work[ed] for at least two years at QBuild," CAR at 533, may have erroneously supported the expert's opinion that "retraining a new engineer could take years to complete" (which is itself inconsistent with the necessary conclusion that Ms. Sheina had to have acquired "specialized knowledge" much sooner (by her seventh month to have one full year in a qualifying Canadian position) for the application to be successful).

utilizes ...." CAR at 531-32.[9]  As described above, USCIS ruled this opinion was insufficient, without more, to satisfy the standard for "specialized knowledge," noting that the expert "does not list the 40 CAD programs and how they are specialized"[10] and that the expert's generalized statement does not "elaborate how [Ms. Sheina's] knowledge application of these programs and systems in her position abroad was specialized." CAR at 10-11. USCIS' position is not outside the bounds of their authority. Indeed, even fully accepting as true Dr. Weinberger's opinion, it would not be inconsistent to say "many engineers in the United States (up to 49%) have similarly broad knowledge of the relevant systems." In other words, simply stating that an employee has knowledge of numerous systems does not necessarily indicate their complexity nor how quickly a similarly educated and experienced engineer could obtain sufficient working knowledge of the programs.

---

[9] Similarly, Dr. Weinberger stated, "[f]rom the information provided by the client and my conference call with her, I gather that the specialized knowledge Ms. Sheina possesses spans broadly over the systems used by the company and industry and include up to 40 CAD programs and 30 ERP systems used by customers. Most engineers only have a basic understanding of a few systems, compared to the beneficiary's extensive knowledge of all the other systems utilized by the companies." CAR at 534.

[10] In its reply brief, CADLink lists the program and system names and suggests, without any authority or evidence, that the "information would probably have been as comprehensible to the adjudicator as it is to counsel and the Court." While CADLink is of course correct in its assessment of the Court's lack of knowledge of CAD and ERP systems, the important point it makes by this demonstration is likely not the one it intended. The obvious fact that the Court cannot independently evaluate this technical information is one of the principal reasons underlying the deference that the Court must give to the determination of the agency charged with making these decisions.

20

In summary,[11] CADLink hired a talented engineer directly out of college and trained her – in only a few months – to use its proprietary software as well as the publicly available technical programs and systems used by its customers. This scenario, which strikes the Court as a set of facts that may be reasonably common, was found by the USCIS (on the particular facts and evidence presented) to not satisfy the standards for granting a L-1B nonimmigrant visa based on "specialized knowledge." As noted several times, the Court's review of this decision is limited and the Court may not substitute its judgment for that of the agency. Faithfully applying the relevant standard of review, the Court concludes that USCIS did not act arbitrarily, capriciously or in violation of the law. Therefore, the Court will grant summary judgment to USCIS and affirm the denial of CADLink's I-129 application.

## III.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED;**

2. Plaintiff's Motion for Summary Judgment (Doc. No. 21) is **DENIED;**

---

[11] As a final argument, CADLink claims that it "strains credulity" that a Brazilian steakhouse *churrascaria* chef (*churrasquiero*) would qualify as a "specialized knowledge" employee, *see Fogo de Chao*, 769 F.3d at 1149, but that a "highly specialized mechanical engineer" working for the Plaintiff would not. Doc. No. 26 at 4-5. Not so. Putting aside the arrogance and condescension inherent in CADLink's argument, each job and set of circumstances must be considered on its own merits. The D.C. Circuit Court of Appeals' ruling that a chef could have "specialized knowledge" based on years of experience and specific cultural knowledge that is unlikely to be found in the United States says nothing one way or the other about whether or not a Project Engineer less than two years out of college acquired "specialized knowledge" in her specific situation.

3.  The USCIS decision dated February 2, 2023 denying Plaintiff's Form I-129 Petition

for a Nonimmigrant Worker on behalf of Daria Sheina is **AFFIRMED**; and

4.  The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed December 26, 2023

Kenneth D. Bell
United States District Judge